## FURLOW v SUPREME LIFE & CASUALTY CO

Ohio Appeals, 2nd Dist, Montgomery Co

No' 1149.   Decided Dec 30, 1932

Cross & Miller for plaintiff in error.
M. W. Shields, Jr., for defendant in error.

KUNKLE, J.

From such judgment of reversal the plaintiff in error prosecutes error to this court. We have considered the record in this case and the briefs of counsel with much care. We shall not attempt to quote in detail from the testimony. Counsel are familiar with the same and it would avail nothing to quote from the testimony unless such liberal quotations were made as to be impracticable. It is admitted that defendant in error had been carrying the policy upon the life of George Jackson for some time and that the plaintiff in error was named as the beneficiary in such policy.

It is admitted that this policy had lapsed by reason of the non-payment of dues; that the same lapsed on June 14, 1930, the last payment paying the premium to May 5, 1930. . The plaintiff in error claims that the premiums previously paid upon this policy of insurance were received by her from her brother. Her husband testified he paid the premiums. The question as to who furnished the money to make the payments is immaterial.

The receipt of revival among other things contains the following:

"I the undersigned George Jackson hereby request Supreme Liberty Life Insurance Company to revive Policy No. 96925 on my life, which lapsed for non-payment of premium due 5/12, 1929 and I certify that I am now in sound health, and have had no illness or injury since the last premium was paid except (if insured has been sick, state disease, date of occurrence, and its duration) no exceptions and I further certify that neither of my parents nor any of my brothers or sisters have died since the above policy was issued except (if a death has occurred state date and cause). And I further certify that my present occupation is janitor and I hereby represent that the statements made or contained herein are true in every respect. Said policy shall not be renewed or go into effect until this certificate is approved by the said company at its Home Office during my lifetime and continuance in good health. Signed George Jackson, Dayton, Ohio, July 10, 1930."

This application of renewal was signed George Jackson. It is admitted that the plaintiff in error signed the name of her

brother thereto.

She claims in her reply that all the acts done by her were at the request of and as agent for George Jackson. If the case were to be disposed of solely upon this theory then the important question to determine would be whether George Jackson knew or did not know that he was in bad health on the 10th of July 1930 when this application for revival was secured.

From a thorough consideration of the record we cannot escape the conclusion that George Jackson knew his physical condition at the time of this revival and also that plaintiff in error knew of his physical condition at the time she secured this revival.

This application seems to have been made on the evening of July 9th but the transaction was not completed according to the papers until the following day July 10th, 1930. The plaintiff in error claims that her brother, George Jackson was in Detroit at the time this application was made. The agent of the company did not see George Jackson and he testifies that the plaintiff advised him that her brother was in Detroit where he was working, but she expected him home within a few days. The plaintiff in error claims that her brother did return to Dayton several days afterward. This statement is not supported by the testimony of her husband who says that George Jackson at the time in question was at the home of the Mother of plaintiff in error. George Jackson was admitted to the Miami Valley Hospital for treatment on July 10, 1930. Dr. Hurless, pages 46 etc., of the record states that he was connected with the City Clinic at the corner of Third and Perry Streets in Dayton, Ohio; that he was also connected with the Miami Valley Hospital; that George Jackson during the fore-part of July came to the clinic accompanied by a lady for treatment; that he consulted with him and that he advised him that he was suffering from a trouble which was a hospital case and not a clinic case and advised him to go to the hospital. That he afterward had George Jackson in charge at the hospital.

The record shows that he was admitted to the hospital on July 10. This is the date of the revival of the policy. Dr. Hurless was asked:

"Do you know the date that Jackson called? A. I am not sure, he was admitted to the hospital the 10th of July.

Q. Do you know whether or not of your own knowledge that was the day he was at the clinic?

A. It was not, he was in the clinic at least two or three days before that. Q. Prior to July 10? A. Yes."

The record at pages 71 and 72 containing the hospital chart shows the serious ailments with which George Jackson was suffering at the time of his admission to the hospital on July 10th, 1930.

George Jackson died from such ailments on August 11, 1930.

If plaintiff in error was acting solely as the agent of George Jackson in making these representations as to his being in good health on July 10 then her statements would be the statements of George Jackson. From the record we cannot escape the conclusion that George Jackson on July 10th, thoroughly appreciated the serious condition of his health. Neither can we escape the conclusion that the plaintiff in error herself knew of the physical condition of George Jackson. Dr. Hurless says some lady accompanied him to the clinic prior to his admission to the City Hospital. The doctor does not know the name of this lady, but the plaintiff in error admits that she accompanied her brother to the city clinic at the time in question.

From a consideration of the entire record, we think the judgment of the Court of Common Pleas is correct and the same should be sustained. Judgment affirmed.

ALLREAD, PJ, and HORNBECK, J, concur.